549 P.2d 217

Norise **WHIPPLE** dba Sam Whipple, and Ernest Gastineau, Appellants,

v.

**SHAMROCK FOODS COMPANY,** formerly known as Shamrock Dairy of Phoenix, Inc., an Arizona Corporation, Appellee.

No. I CA–CIV 3038.

Court of Appeals of Arizona, Division 1.

May 4, 1976.

Meyer & Vucichevich by Henry G. Hester III, Phoenix, for appellants.

Jennings, Strouss & Salmon by Charles R. Hoover and David L. White, Phoenix, for appellee.

## OPINION

KRUCKER, Judge.

A summary judgment in favor of Shamrock as to two counts of appellants' complaint seeking to recover damages from Shamrock is the subject of this appeal. Shamrock's defense to appellants' claims was illegality and the lower court in granting summary judgment apparently concluded the defense was well-taken.

Appellants are wholesale distributors of dairy products and Shamrock is a manufacturer of dairy products. In 1966, appellant Gastineau entered into an agreement with Shamrock and in 1967, appellant Whipple entered into an agreement with Shamrock. Since both agreements are essentially the same, we shall hereinafter re-

fer to it as "the agreement." Appellants' complaint alleged, inter alia, the execution of these agreements in which Shamrock covenanted with them not to compete in the distribution at wholesale or in the disposal of any dairy products manufactured, processed, or handled by Shamrock in appellants' territories. It was alleged that Shamrock breached its agreement by either selling, distributing or disposing of products manufactured, processed or handled by it in the areas in which it covenanted that appellants would have the "sole and exclusive" right to sell and/or distribute the products. Appended to the complaint were copies of the two agreements.[1] The pertinent provisions are:

"1. First Party hereby grants and extends to Second Party the sole and exclusive right to distribute at wholesale dairy and food products manufactured, processed or handled by First Party, and First Party hereby agrees to sell to Second Party upon the terms and conditions hereinafter set forth such products for sale by Second Party at wholesale in the territory described in Exhibit A hereto attached and by this reference made a part hereof.

2. Second Party agrees to devote such time and effort . . . . During the continuation of this Agreement First Party shall not sell or dispose of any of its products at wholesale in said territory nor give to any other person or persons, firms or corporations the right to sell at wholesale said products in said territory.

3. . . . and Second Party agrees that he will not solicit, sell, give, deliver, or dispose of any of said products, either directly or indirectly, at retail, wholesale, or otherwise outside of said aforesaid territory."

Appended to appellee's motion for summary judgment was an affidavit of Mr. Dew, appellee's vice-president. In it Dew stated that he had examined the relevant records of Shamrock and had ascertained that, before he became vice-president in March, 1969, no shipments of Shamrock products into appellants' territories were made other than through appellants from the time the agreements were executed. However, according to the affidavit, two other distributors, Associated Grocers and Pew Distributing Co., had periodically sold Shamrock Products in appellants' territory since April, 1970. Associated Grocers, a membership grocer organization, had sold dairy and other food products to its member stores in appellants' territory. Pew Distributing, an independent distributor of food products and one of appellants' competitors, had also sold non-dairy food products within appellants' territories. The affidavit also recited facts which established that Associated Grocers and Pew Distributing became the owners of the Shamrock products at the time of delivery.

Mr. Dew stated that the products were either delivered to Associated Grocers at its main warehouse in Phoenix, Arizona, or delivered to the Shamrock dock in Show Low (appellant Whipple's territory). Also, from April, 1970, through 1973, Shamrock occasionally delivered to Pew at the Shamrock dock in Show Low and from the beginning of 1974, deliveries were made in Show Low.

According to Mr. Dew, Associated Grocers acquired all of the incidents of ownership in the products involved at the time the products left the Shamrock plant in Phoenix. However, as to Pew, it acquired the incidents of ownership in Show Low as

1. Appellant Whipple's territory was described as: "That certain area located in the Counties of Gila, Navajo, and Apache, State of Arizona, bounded as follows; to wit:
  To include the towns of Show Low, Arizona, White River Apache Indian Reservation, excluding McNary, Maverick, Hon-dah and Indian Pine."

Appellant Gastineau's territory was described as: "That certain area located in the County of Apache, State of Arizona, bounded as follows; to wit:
  To include the towns of Springerville, Eager, Alpine, and Greer, Arizona."

to the products delivered in Show Low (appellant Whipple's territory).

We agree with appellants that summary judgment may be granted only where there is no material factual issue and the movant is entitled to judgment as a matter of law. Rule 56(c), Rules of Civil Procedure, 16 A.R.S. Appellee's position was that the agreements between it and appellants were illegal under the U.S. Supreme Court decision in *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). In *Schwinn*, the court held that when a manufacturer sells his products to another, it is per se unlawful for the manufacturer to restrict and confine the areas within which and persons to whom the product may be traded. The court, however, recognized that a manufacturer of a product, other and equivalent brands of which are available in the market, may select his customers and "franchise" certain dealers to whom, alone, he will sell his goods. The court stated:

> "If the restraint stops at that point—if nothing more is involved than vertical 'confinement' of the manufacturer's own sales of the merchandise to selected dealers, and if competitive products are readily available to others, the restriction, on these facts alone, would not violate the Sherman Act." 87 S.Ct. at 1864.

Thus we see that it is not a *per se* offense for a manufacturer to agree with a distributor upon an exclusive franchise, even if this means cutting off another distributor. *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, 416 F.2d 71 (9th Cir. 1969) and cases cited therein; *Venzie Corp. v. United States Mineral Prod. Co., Inc.*, 382 F.Supp. 939 (E.D.Pa. 1974), aff'd, 521 F.2d 1309 (3d Cir. 1975); *Metro Cable Co. v. CATV of Rockford, Inc.*, 375 F.Supp. 350 (N.D.Ill.1974), aff'd, 516 F.2d 220 (7th Cir. 1975).

Appellants' claims against appellee were based upon appellee's alleged breach of its agreement granting appellants the exclusive right to sell Shamrock dairy products in the designated territories. Mr. Dew's affidavit, which is uncontroverted, establishes that Shamrock delivered its products to Associated Grocers and Pew Distributors in Show Low. However, as to Associated Grocers, those sales took place in Phoenix whereas as to Pew, the sales were in Show Low.

Since appellants failed to file affidavits in opposition to Mr. Dew's, the facts stated in his affidavit are deemed admitted. *Compton v. National Metals Co.*, 10 Ariz.App. 366, 459 P.2d 93 (1969). The affidavit does establish that Shamrock did sell its products to Pew in Show Low (the territory in which it had given appellant Whipple an exclusive franchise) and that Shamrock made no sales directly in appellants' territories. Therefore, as to the territory in which appellant Gastineau had the exclusive right to sell, Mr. Dew's affidavit shows no violation of Shamrock's agreement with Gastineau. On the other hand, it does demonstrate a breach of its agreement with Whipple as sales were made in Show Low. Therefore, as to appellant Whipple, Shamrock did not establish that it was entitled to judgment as a matter of law since vertical confinement of its own sales was not per se illegal. *Schwinn*, supra. We reverse the summary judgment in favor of Shamrock as to appellant Whipple since the illegality defense was not established.

We affirm the summary judgment, however, against appellant Gastineau. Shamrock established that it had not breached its agreement as to Gastineau's territory and, under the *Schwinn* rationale, could not restrict either Pew or Associated Grocers from selling its products in Gastineau's territory.

For the foregoing reasons, we affirm in part and reverse in part.

HOWARD, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).